### ROUSH *v.* HEFFELBOWER.

MASTER AND SERVANT — WORKMEN'S COMPENSATION ACT — CORN HUSKING FROM FARM TO FARM NOT FARM LABOR.

One owning a corn husking machine and going from farm to farm husking corn is not engaged in ordinary farm labor, whether he receives his pay in money or labor, and one employed by the owner to work as a member of the crew of such machine, while so employed, is not a farm laborer within the meaning of the workmen's compensation act, and therefore the common-law defenses of contributory negligence and assumption of risk are not available to the employer in an action by his employee for personal injuries received while so employed.   WIEST, C. J., dissenting.

Error to Barry; Smith (Clement), J.    Submitted October 2, 1923.    (Docket No. 9.)    Decided December 20, 1923.

Case by Floyd Roush against David Heffelbower for

As to whether farm laborers and domestic servants are employees within meaning of workmen's compensation acts, · see notes in L. R. A. 1917D, 147; L. R. A. 1918F, 202.

On application of workmen's compensation acts to employees engaged in farming, see note in· 7 A. L. R. 1296.

personal injuries.    Judgment for defendant.    Plaintiff brings error.    Reversed.

*John M. Gould, Lawrence W. Smith,* and *Harry D. Jewell,* for appellant.

*Philip T. Colgrove,* for appellee.

McDONALD, J.    This action was brought to recover damages for injuries received while assisting in the operation of a corn husker belonging to the defendant. Both of the parties are farmers living in the same neighborhood near Freeport in Barry county, Michigan.    The plaintiff did not own the farm upon which he was living at the time of the accident, but was engaged in working it on shares.    The defendant owned a large farm and frequently exchanged work with the plaintiff and sometimes employed him at regular wages.    In the fall of 1920, the defendant was the owner of a corn husker which he used on his own farm and on the farms of neighbors.    He employed the plaintiff to go with him from farm to farm and assist in its operation.    At the time of the accident the plaintiff was feeding the husker when his right arm became caught in the machinery and was so badly mangled as to require amputation.    He claims that his injuries were caused by the negligence of the defendant in not providing him with a safe place in which to work, in failing to instruct him as to the proper operation of the machine, and in neglecting to warn him of the dangers involved.    Denying the negligence alleged by the plaintiff, the defendant made his defense on the theory of assumption of risk and contributory negligence.    The verdict of the jury was in favor of the defendant.

The only question involved is whether the common-law defenses of contributory negligence and assumption of risk were available to the defendant.    This

depends, of course, upon whether the plaintiff at the time of the accident was a farm laborer within the meaning of the workmen's compensation act (2 Comp. Laws 1915, § 5424) which provides that the provisions of the act shall not apply to actions for personal injuries by household domestic servants and farm laborers. The circuit judge held the plaintiff was a farm laborer at the time of the accident; that as such he was exempted from the provisions of the compensation law and that, therefore, in his action for personal injuries, the common-law defenses were available to the defendant. The plaintiff says that in so ruling the court was in error.

Was the plaintiff a farm laborer within the meaning of the statute? The power of the legislature to classify employees and to except from the operation of the workmen's compensation act the class designated as farm laborers, is based upon the fact that there is a reasonable and substantial distinction between the conditions under which the farm laborer performs his work and the conditions under which work is performed by those engaged in other employments. In excluding farm laborers from the benefits granted to other classes, it was evidently the theory of the legislature that the work of the farm laborer was not sufficiently hazardous to require the protection of the compensation law. As the danger incident to the operation of machinery used in threshing grain and husking corn is as great as that incident to the use of machinery in a factory or elsewhere, it was probably in the legislative mind that when a farmer was engaged in that business apart from his regular farming operations, he was not engaged in farming and his employees were not farm laborers. In no other way can the exclusion of farm laborers from the benefits of the statute be explained or justified. We think the legislature must have considered a farm

laborer as one who is employed to do ordinary farm work, and not one engaged in the special business of going from farm to farm to thresh grain and husk corn with machinery not ordinarily used by farmers. In *Shafer* v. *Parke, Davis & Co.,* 192 Mich. 577, this court defined a farm laborer to be, "Any man employed to work on a farm, and to perform the work ordinarily done there." The kind of work ordinarily done on a farm is a matter of common knowledge. In earlier days it was the custom to thresh grain with a flail and to husk corn with the hand; that was then ordinary farm labor, a part of the regular farm work. Now the flail has been discarded, but it is not practical or profitable for a farmer to own a thresher and thresh his own grain. That work is given over to men who have special outfits for that purpose, and who make a business of threshing at a stated price per bushel. Threshing by this method is not ordinary farm labor, and a man who follows the business is not engaged in farming, though he works on a product of the farm. To a lesser extent the same is true of husking corn. In the instant case the defendant had a special outfit for husking corn, one not commonly used by farmers. The evidence is that he was the only farmer in that neighborhood who owned such a machine. It was adapted to the use of husking corn on a large scale and required a crew of men to operate it. It had been defendant's custom for several years past to go about from farm to farm in his neighborhood husking corn at a contract price of seven cents per bushel. While doing this he was not engaged in farming. It was no part of his regular farming operations. Counsel calls our attention to the fact that he was merely exchanging work with his neighbors. It is immaterial whether he took his pay in labor or in money. The fact is that he was specially engaged in husking corn for others for a stated com-

pensation. He had been at work at five different places just prior to the accident. He testifies that for the past six or seven years he has not done any work with his husker outside of his immediate neighborhood. "Before that I went over into Irving. Since that time I have not gone over two miles and a half outside of the neighborhood." It fairly appears from the testimony that, with the exception of two years since 1912, he has traveled about from place to place husking corn for a stated compensation. To assist him in this work, in the season of 1920, he employed the plaintiff at so much per hour. The plaintiff was not employed to do general farm work on defendant's farm or elsewhere. His employment was for a special work not ordinarily done by farmers. We think that while thus employed he was not a farm laborer within the meaning of the workmen's compensation act.

In support of his contention that the plaintiff was a farm laborer, counsel for the defendant cites and relies on the following cases: *Sylcord* v. *Horn*, 179 Iowa, 936 (162 N. W. 249, 7 A. L. R. 1285); *State, ex rel. Bykle*, v. *District Court*, 140 Minn. 398 (168 N. W. 130, L. R. A. 1918F, 198). The ruling in these cases seems to be that a man is a farm laborer merely because he is doing work upon a farm and upon farm crops. In our view these cases do not lay down the correct rule. We think that the rule announced in the following cases cited by counsel for the plaintiff is more in harmony with the spirit and reason of our statute: *White* v. *Loades*, 178 App. Div. 236 (164 N. Y. Supp. 1023); *In re Boyer*, 65 Ind. App. 408 (117 N. E. 507); *Vincent* v. *Taylor Bros.*, 180 App. Div. 818 (168 N. Y. Supp. 287).

The question coming up under a much different state of facts has been before this court in *Shafer* v. *Parke, Davis & Co.*, 192 Mich. 577, and *Bates* v. *Shaffer*, 216 Mich. 689. In both of these cases the employees were

engaged on farms to do regular farm work.    In the instant case the plaintiff was not employed to work on the defendant's farm; he was not employed to do regular farm work; he was employed in work that was separate from and independent of his employer's regular farming operations.

In holding that under the circumstances of this case the plaintiff was not a farm laborer within the meaning of our statute, we do not mean to be understood as saying that he would not have been a farm laborer if he had been employed to assist in the operation of this machine in husking the defendant's corn on his own farm.    Nor do we wish it understood that the ruling applies where the machine is owned by farmers on the co-operative plan, that is, where it is owned by a group of farmers for the purpose of husking their own corn.    The extent of our holding is that one is not a farm laborer within the meaning of our statute when in the employ of a man who travels about from farm to farm with a corn husking machine, engaged in the commercial business of husking corn for a stated compensation.

For the reasons herein stated the judgment of the circuit court is reversed.    The plaintiff will have costs.

FELLOWS, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred with MCDONALD, J.

WIEST, C. J. (*dissenting*).    I am in accord with the holdings in the Iowa and Minnesota cases cited by my Brother.    The statute exempts from the provisions of the workmen's compensation law household or domestic servants and farm laborers.    As said by Mr. Justice Hallam in the Minnesota case:

"Much farm work is done by the use of complicated machinery.    There are tractor plows, self-binders and even combination harvester-threshers by means of which harvesting and threshing are done as one oper-

ation.    These and other operations may be done for others by one who is able to own the more complicated and expensive machinery.    But it is all, nevertheless, farm work and the employee who does such work is a 'farm laborer' within the meaning of the compensation act."

I am for affirmance.