STUART, Collector of Internal Revenue,
v. KLECK.
No. 10008.

Circuit Court of Appeals, Ninth Circuit.
July 6, 1942.

Samuel O. Clark, Jr., Asst. Atty. Gen., J. Louis Monarch, Arthur J. Jacobs, and Michael Gould, Sp. Assts. to the Atty. Gen., and Frank E. Flynn, U. S. Atty., and C. A. Edwards, Asst. U. S. Atty., both of Phoenix, Ariz., for appellant.

Thomas W. Glenn, of Phoenix, Ariz., for appellee.

Earl Warren, Atty. Gen., of California, and John J. Dailey, Deputy Atty. Gen. (Maurice P. McCaffrey and Leonard M. Friedman, both of Sacramento, Cal., of counsel), amicus curiae for California Employment Commission.

Before GARRECHT, MATHEWS, and STEPHENS, Circuit Judges.

GARRECHT, Circuit Judge.

W. P. Stuart, as United States Collector of Internal Revenue for the District of Arizona, appellant here, claiming authority under the Social Security Act, exacted from Jack S. Kleck, appellee, taxes for 1936, 1937, and 1938, which were paid under protest. Thereafter this suit was brought in the United States District Court for the District of Arizona to recover the payments. Judgment was entered for appellee, and appellant appeals.

The question presented is whether the services performed by the taxpayer's employees constituted "agricultural labor" within the meaning of the Social Security Act, c. 531, 49 Stat. 620, §§ 901, 907, 42 U.S.C.A. §§ 1101, 1107, and Treasury Regulations 90, Art. 204, 206, 206(1), the pertinent parts of which appear in the margin.[1]

The Commissioner of Internal Revenue determined that none of the taxpayer's employees came under the classification "agri-

---

[1] "Section 901. On and after January 1, 1936, every employer (as defined in section 907 [1107 of this chapter]) shall pay for each calendar year an excise tax, with respect to having individuals in his employ, equal to the following percentages of the total wages (as defined in section 907 [1107 of this chapter]) payable by him (regardless of the time of payment) with respect to employment (as defined in section 907 [1107 of this chapter]) during such calendar year: * * *."

"Sec. 907. When used in this title [sections 1101 to 1110 of this chapter]—

"(a) The term 'employer' does not include any person unless on each of some twenty days during the taxable year, each day being in a different calendar week, the total number of individuals who were in his employ for some portion of the day (whether or not at the same moment of time) was eight or more.

*     *     *     *

"(c) The term 'employment' means any service of whatever nature, performed within the United States by an employee for his employer, except—

"(1) Agricultural labor; * * *."

Treasury Regulations 90, promulgated under Title IX of the Social Security Act:

"Art. 204. Who are employers.—Commencing with the calendar year 1936, any person who employs 8 or more individuals (in an employment as defined in section 907(c) of the Act) on a total of 20 or more calendar days during a calendar year, each such day being in a different calendar week, is an employer subject to the tax imposed with respect to such year.

*     *     *     *

"In determining whether a person employs a sufficient number of individuals to be an employer subject to the tax, no individual is counted unless he is engaged in the performance within the United States of services not excepted by section 907(c). (See articles 206 to 206(7), inclusive.)"

"Art. 206. Excepted services generally.

*     *     *

"The exception attaches to the services performed by the employee and not to the employee as an individual; and the exception applies only for the period during which the individual is rendering services in an excepted class."

"Art. 206(1). Agricultural labor.—The term 'agricultural labor' includes all services performed—

"(a) By an employee, on a farm, in connection with the cultivation of the soil, the harvesting of crops, or the raising, feeding, or management of live stock, bees, and poultry; or

"(b) By an employee in connection with the processing of articles from materials which were produced on a farm; also the packing, packaging, transportation, or marketing of those materials or articles. Such services do not constitute 'agricultural labor,' however, unless they are performed by an employee of the owner or tenant of the farm on which the materials in their raw or natural state were produced, and unless such processing, packing, packaging, transportation, or marketing is carried on as an incident to ordinary farming operations as distinguished from manufacturing or commercial operations.

"As used herein the term 'farm' embraces the farm in the ordinarily accept-

cultural labor", within the meaning of the statute, and appellee was required to pay taxes with respect to the wages paid to such employees.

The court below made these findings of fact:

During the years 1936, 1937, and 1938, the taxpayer employed more than eight employees who performed the following labor:

Clearing, grubbing, leveling, ditching, plowing, discing, dragging, bordering and generally preparing land for the planting of agricultural crops thereon;

Dragging, sowing, broadcasting, and planting seed on said agricultural lands for and only for the purpose of growing agricultural crops thereon and therefrom;

Digging tanks, reservoirs and catch basins, and placing, forming and fashioning earthen dams for the purpose of empounding water to be used for watering livestock;

Operating mechanical agricultural implements and farm machinery for the purposes hereinabove enumerated.

The taxpayer did not employ eight or more employees who were not engaged in such labor.

and concluded as a matter of law that the taxpayer's employees performing the services described above constituted "agricultural labor" within the meaning of Section 907 (c) (1) of the Social Security Act, and the taxpayer was not the employer of more than eight employees who were not engaged in such "agricultural labor".

The Government maintains that the services of the taxpayer's employees cannot be considered "agricultural labor" because they were performed in a commercial, and not agricultural, enterprise, and that the laborers were not in the employ of the owner or tenant of the lands on which the services were performed.

The briefs and the oral arguments devote much space and time to the discussion of the Social Security Act Amendments of 1939, c. 666, 53 Stat. 1360, 42 U.S.C.A. § 302 et seq. This enactment very definitely would except the employees engaged in the kind of labor which we are here considering. Appellant, however, insists that the later passage of this act of Congress clearly implies that there could have been no such exemption under the statute prior to its amendment. The appellee just as earnestly contends that the exemption was always intended by Congress under the original act, but because some courts had given to it a different interpretation, the amendment was passed to clarify and make certain this meaning.

We do not deem it necessary to resolve this controversy in this case since we now restrict ourselves to giving effect to what appears to be the plain meaning of the words of the statute as enacted.

█ The statute expressly excepts "agricultural labor", but does not expand the term in any detail. When the Congress, in providing for an exemption from the provisions of the Act, made use of the broad term "agricultural labor", this expression, used by itself, must be given a meaning wide enough to include agricultural labor of any kind, as generally understood throughout the United States.[2] Webster's New International Dictionary, Second Edition, defines "agriculture" as—

"The art or science of cultivating the ground, and raising and harvesting crops, often including also feeding, breeding, and management of livestock; tillage; husbandry; farming; in a broader sense, the science and art of the production of plants and animals useful to man, including to a variable extent the preparation of these products for man's use and their disposal by marketing or otherwise. In this broad use it includes farming, horticulture, forestry, dairying, sugar making, etc."

Treasury Regulations 90, promulgated under the Act enlarges on the subject. We read in Article 206:

"Excepted services generally. * * *

"The exception attaches to the services performed by the employee and not to the employee as an individual; * * *."

█ Accordingly, the exemption attaches to the "services performed", which refers to the type of work that is being done, and is not dependent on the form of the contract or whether the employee is em-

ed sense, and includes stock, dairy, poultry, fruit, and truck farms, plantations, ranches, ranges, and orchards.

"Forestry and lumbering are not included within the exception."

[2] United States v. Turner Turpentine Co., 5 Cir., 111 F.2d 400, 405; Lowe v. North Dakota Compensation Bureau, 66 N.D. 246, 264 N.W. 837, 107 A.L.R. 973; 2 Am.Jur. § 2, p. 395; 3 C.J.S., Agriculture, § 1, p. 366.

ployed by the owner or tenant of the farm or an independent contractor.[3] By Article 206(1), "The term 'agricultural labor' includes all services performed—(a) By an employee, on a farm, in connection with the cultivation of the soil". The important question, then, is: What is the nature of the services furnished and were these performed upon a farm?

According to the findings of the court, above set out, which are supported by the evidence in the case, these employees were actually employed on a farm in preparing land for the planting of agricultural crops thereon; in seeding the lands; in constructing dams and reservoirs for impounding water to be used for watering livestock; and in operating farm machinery in connection with the work.

Appellant insists that the statute was restricted by the Regulations so that these employees of appellee do not come within the exemption because they were not in the employ of the owner or tenant of the land on which the services were performed. To support the argument it is urged that paragraph (a) of Article 206(1), which requires merely that the agricultural labor performed be "By an employee, on a farm, in connection with the cultivation of the soil", must be read as if it had appended to it the following sentence—

"Such services do not constitute 'agricultural labor,' however, unless they are performed by an employee of the owner or tenant of the farm on which the materials in their raw or natural state were produced, and unless such processing, packing, packaging, transportation, or marketing is carried on as an incident to ordinary farming operations as distinguished from manufacturing or commercial operations."

This sentence is no part of (a) in its text, but is a part of the next paragraph, (b), where the connection makes sense. From the language it unmistakably appears that it was not intended to apply to paragraph (a), which is not concerned with the processing of articles from materials which were produced on a farm. These activities are covered exclusively in (b), which deals with the products of the farm after they have been gathered.

The case at bar had its origin in the state of Arizona. In a case decided by the supreme court of that state the appellee here was a party; the same questions were involved. The state statutes and regulations and the facts were practically identical with those in this case. While in this case the Federal courts are not required to follow the holding of the state court, it is interesting to note that this Arizona case of Wayland v. Kleck, 112 P.2d 207, resolved all the issues as did the court below.

In the recent case of Chester C. Fosgate Co. v. United States, 5 Cir., 125 F.2d 775, it was held that services rendered by a company in cultivating crops of citrus fruit under contracts with crop owners were "agricultural labor" rendered in connection with the cultivation of the soil, even though crop owners did not directly hire laborers but dealt with the company, which in turn put laborers to work, and the company was entitled to recover back social security taxes assessed with reference to wages paid to those laborers.

Neither the instant case nor any expression in the Fosgate case opinion, supra, conflicts with our opinion in North Whittier Heights Association v. National Labor Relations Board, 9 Cir., 109 F.2d 76.

No error appearing in the findings and conclusions of the District Court, the judgment is affirmed.

[3] Slycord v. Horn, 179 Iowa 936, 162 N.W. 249, 7 A.L.R. 1285; Lowe v. North Dakota Compensation Bureau, 66 N.D. 246, 264 N.W. 837, 107 A.L.R. 973; State ex rel. Bykle v. District Court, 140 Minn. 398, 168 N.W. 130, L.R.A.1918F, 198.